IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEYONTAE CORNAIL STINSON,

                              Petitioner,

    v.                                                                        OPINION and ORDER

WARDEN LARRY FUCHS,                                     20-cv-1101-jdp

                              Respondent.

Petitioner Deyontae Cornail Stinson seeks relief under 28 U.S.C. § 2254 following convictions for attempted armed robbery, first-degree reckless injury, and felony possession of a firearm in Milwaukee County Circuit Court. The petition is fully briefed and ready for decision.

Stinson raises several claims of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Respondent contends that Stinson's claims are procedurally defaulted and meritless. I conclude that Stinson's claims are not procedurally defaulted because the Wisconsin Court of Appeals decided them on the merits. But I agree that Stinson's claims fail on the merits and I will deny the petition.

BACKGROUND

I take the following facts from the state court of appeals' decision affirming Stinson's convictions and the trial court's order denying his motion for postconviction relief. *State v. Stinson*, 2020 WI App 41. According to the criminal complaint, one day, Stinson and his brother, Lavontae, entered a convenience store with masks on. *Id.* ¶ 2. "One of them pointed a gun at the cashier, S.A., while the other acted as the lookout." *Id.* "Ultimately, the shooter

shot S.A. in the arm and shot a customer, J.M., in the leg." *Id.* "J.M. told police that prior to the attempted robbery, he saw a dark, four-door sedan circling his neighborhood." *Id.*

"Multiple witnesses testified at trial consistent with the facts laid out in the criminal complaint." *Id.* ¶ 12. S.A. testified that he stood 5'8" and that the shooter was shorter than he was. *Id.* ¶ 13. J.M. testified that the shooter was short and "had a medium or caramel complexion and hazel eyes." *Id.* J.M. also testified that, after J.M. pulled out a gun, the lookout said, "Self, he's got a gun." *Id.* The police testified that they believed Stinson was 5'4" based on prior interactions and that he has hazel eyes. *Id.* ¶ 14. J.M. and S.A. are both 5'8".

A resident from the immediate area testified that, shortly before the attempted robbery and shooting, she noticed a dark car parked outside her garage. *Id.* ¶ 15. She also stated that two men exited the car, donned masks, then reentered the car and left. *Id.* She identified a photo of a black Buick Rendezvous that the suspects allegedly used as the car that was parked outside her garage. *Id.* Surveillance video showed a black Buick Rendezvous driving in the area "around the time of the attempted robbery and shooting." *Id.*

The police testified that they stopped this vehicle twice after the incident, and that Stinson was in the vehicle both times. *Id.* ¶ 16. During one stop, an officer found "three .380 caliber rounds; one was Winchester brand, the other two were PPU brand—the same caliber and brands as the casings found at the" convenience store. *Id.*

Stinson was interviewed after this stop. *Id.* ¶ 17. When Lavontae walked past the interview room, he said something like, "Hey Self, what's up, Self?" *Id.*

One week before the shooting, Stinson took a cell phone rap video of himself holding a .380 caliber firearm. *Id.* ¶ 18. An officer interpreted nonstandard language used in the video, testifying that Stinson talked about shooting or robbing and getting rich as he pointed the gun

2

at the camera. *Id.* Lavontae made similar remarks. *Id.* Stinson also "looked up news articles about the attempted robbery after the fact." *Id.*

A firearms examiner testified that the three casings recovered from the convenience store and two casings found at Lavontae's home after the shooting were fired "from the same .380 firearm." *Id.* ¶ 19.

The jury found Stinson guilty as charged. *Id.* ¶ 20. The trial court imposed a 53-year sentence. *Id.*

Represented by counsel, Stinson filed a motion for postconviction relief, arguing that trial counsel provided ineffective assistance by failing to: (1) move to sever the felon-in-possession charge that was based on Stinson's cell phone video; (2) move to exclude the cell phone video; (3) object to the firearms examiner's testimony that tool marks are similar to fingerprints; (4) object to an officer's translation of terms used in Stinson's cell phone video; (5) object to an officer's testimony about a traffic stop; (6) object to the firearms examiner's testimony that a second analyst confirmed his findings; and (7) object to the admission of certain statements by Stinson to police on the ground that Stinson invoked his right to remain silent and right to counsel. *Id.* ¶ 21; Dkt. 10-2 at 71. The trial court denied the motion without holding a hearing under *State v. Machner*, 92 Wis. 2d 797 (Ct. App. 1979). Dkt. 10-2 at 77. In denying Stinson's claims, the trial court thoroughly analyzed the trial evidence, which it characterized as "very strong" and "simply overwhelming." *Id.* at 74 n.2, 76.

The court of appeals affirmed. *Stinson*, 2020 WI App 41. The court of appeals noted that the trial court must grant a *Machner* hearing only if the defendant's postconviction motion contains "allegations of material fact that, if true, would entitle the defendant to relief." *Id.* ¶ 25 (citing *State v. Allen*, 2004 WI 106). "If the defendant does not allege sufficient material facts

3

that, if true, would entitle him or her to relief, if the allegations are merely conclusory, or if the record conclusively shows that the defendant is not entitled to relief, the [trial] court has discretion to deny a motion without a hearing." *Id.* After stating *Allen*'s rule, the state court of appeals wrote that it "agreed" with the trial court's "finding that Stinson's factual allegations did not prove prejudice." *Id.* ¶ 26. The state court of appeals then thoroughly analyzed the trial evidence and concluded that trial counsel was not ineffective and that "the cumulative effect of Stinson's allegations did not prejudice his trial." *Id.* ¶¶ 27–41. The state supreme court denied Stinson's petition for review without comment. *State v. Stinson*, 2022 WI 75.

In his federal petition, Stinson raises the same claims that he raised in his postconviction motion. *See* Dkt. 1; Dkt. 1-3. In his response, respondent contends that the state court of appeals rejected Stinson's claims under *Allen* and that, therefore, they are procedurally defaulted. Dkt. 10 ¶ 6. Respondent adds that, even if Stinson could overcome the procedural default, he would not be entitled to habeas relief. *Id.* ¶ 7.

Stinson filed an initial brief, which he largely devotes to procedural issues. Dkt. 21. In his brief in opposition, respondent contends that Stinson's claims are procedurally defaulted and, alternatively, meritless. Dkt. 28. Stinson's reply is like his initial brief in that it contains very few meaningful arguments about the merits of his claims. Dkt. 29. In his initial brief and reply, Stinson raises the new claim that the trial court's failure to hold a *Machner* hearing, and the Office of Lawyer Regulation (OLR)'s failure to investigate his grievance against trial counsel, violated due process and equal protection. *See, e.g.*, Dkt. 29 at 12–13.

4

ANALYSIS

**A. Procedural default**

A claim is procedurally defaulted, and barred from federal review, if the last state court that rendered judgment "clearly and expressly" stated that its judgment rested on a state procedural bar. *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014). The state procedural bar must be "adequate and independent" for procedural default to apply. *Whyte v. Winkleski*, 34 F.4th 617, 623 (7th Cir. 2022). A state law ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Lee*, 750 F.3d at 693. "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.* "*Allen*'s pleading standard is an adequate and independent state procedural rule." *Whyte*, 34 F.4th at 625.

Here, the state court of appeals did not clearly rely on *Allen*'s pleading rule to reject Stinson's claims. The court did not limit its analysis to the sufficiency of Stinson's pleading, despite its statement that his "factual allegations did not prove prejudice." *Stinson*, 2020 WI App 41, ¶ 25. In stating *Allen*'s pleading standard, the court wrote that the trial court may deny a postconviction motion without a *Machner* hearing "if the record conclusively shows that the defendant is not entitled to relief." *Id.* Thus, it seems that the court of appeals affirmed the trial court's decision not to hold a hearing because the trial evidence conclusively showed that Stinson was not entitled to relief under *Strickland*. This reading makes sense because both the trial court and state court of appeals thoroughly analyzed the evidence in denying Stinson's claims. The *Allen* rule applies only when state courts have deemed the allegations in petitioners' pleadings too conclusory to satisfy *Strickland*. *See Whyte*, 34 F.4th at 625, 628; *Triplett v. McDermott*, 996 F.3d 825, 830 (7th Cir. 2021); *Lee*, 750 F.3d at 693–94.

5

A "state court need not fear reaching the merits of a federal claim in an *alternative* holding," *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (emphasis in original), but the record does not reflect that the state court of appeals did so here. I conclude that the state court of appeals decided Stinson's claims on the merits, and thus they are not procedurally defaulted.

**B. Merits**

Federal courts may grant habeas relief only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2). A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254(d)(1)'s "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. For the application to be unreasonable, a state prisoner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam). Similarly, for a state court's factual finding to be unreasonable, there must be no possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015); *Wood v. Allen*, 558 U.S. 290, 301–02 (2010).

When applying § 2254(d), courts look to "the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary

review." *See Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Review under § 2254(d) is limited to the state-court record. *See Shoop v. Twyford*, 142 S. Ct. 2037, 2043–44 (2022); *Dunn v. Neal*, 44 F.4th 696, 702 (7th Cir. 2022). The petitioner bears the burden to show an error under § 2254(d). *See Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022).

Claims of ineffective assistance of trial counsel are governed by the two-part test in *Strickland*, 466 U.S. 668. To establish that counsel provided ineffective assistance, Stinson must show that trial counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687. To prove deficient performance, Stinson must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, Stinson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Conclusory claims of ineffective assistance do not satisfy *Strickland*. *See id.* at 690 ("[A] claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."); *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002) ("[C]onclusory allegations do not satisfy *Strickland*'s prejudice component.").

1. **Claim 1**

In claim one, Stinson contends that counsel was ineffective because he did not move to sever the felon-in-possession charge from the remaining charges. Dkt. 1-3 at 3–4. Stinson states that the felon-in-possession charge was based on "a very unflattering" cell phone rap video in

which Stinson "bragged about street violence" while possessing a gun and smoking marijuana. *Id.* at 4. Stinson contends that there was a strong likelihood that the jury would use this "unrelated criminality" to infer that, because he possessed a firearm at that time, he likely used a firearm during the attempted robbery. This inference was especially likely, Stinson adds, because "the state's case was built entirely on circumstantial evidence." *Id.*

Here, the state court of appeals concluded that it was "highly unlikely the jury would have acquitted Stinson of any of the charges had the felon in possession charge been severed" considering "the overwhelming evidence that Stinson was involved in the food mart robbery." *Stinson*, 2020 WI App 41, ¶ 27. I agree that, although the state's evidence was circumstantial, it was very strong. The state court of appeals reasonably concluded that, even had the trial court granted a motion to sever, Stinson could not show a reasonable probability of a more favorable outcome.

2. **Claim 2**

In claim two, Stinson contends that counsel was ineffective because he failed to move to exclude the cell phone rap video. Dkt. 1-3 at 4–6. Stinson contends that the video's potential for unfair prejudice substantially outweighed its probative value. *Id.* at 5–6. This is because, Stinson reasons, the video was evidence that he had a "bad character" and fed into "deep-seated stereotypes about African-American men." *Id.* at 6.

The state court of appeals agreed with the trial court that the video's relevance outweighed "any prejudicial components" because Stinson filmed it a week before the attempted robbery and declared that he would get rich soon while "flashing a gun of the same caliber used in the robbery." *Stinson*, 2020 WI App 41, ¶ 27. The state court of appeals' determination that the video was admissible is a decision under Wisconsin law, and it is

8

decisive here. *See, e.g.*, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). I cannot, in the context of habeas review, revisit the state court of appeals' decision that video is admissible. *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (improper for habeas court to second-guess state court determination that trial counsel was not ineffective for failing to object to testimony because it was admissible under Wisconsin law). In light of its evidentiary ruling, the court of appeals properly concluded that Stinson could not show prejudice arising from his attorney's failure to move to exclude the video.

### 3. Claim 3

In claim three, Stinson contends that counsel was ineffective because he failed to: (1) object to the firearms examiner's testimony that no two firearms will ever leave behind the same tool marks; and (2) cross-examine the firearms examiner's testimony on the allegedly faulty scientific basis for his testimony. Dkt. 1-3 at 6–9.

The state court of appeals rejected this claim, holding that Stinson could not demonstrate prejudice. The court reasoned that, even without the firearms examiner's testimony, "the jury still heard testimony about a .380 caliber firearm being used to commit the robbery, casings from a .380 caliber firearm found in Stinson's vehicle, and casings from a .380 caliber firearm found at Lavontae's home." *Stinson*, 2020 WI App 41, ¶ 30. Therefore, even if counsel had successfully objected to the firearms examiner's testimony, "the objection would not have undermined the litany of evidence tying Stinson to the firearm used at the food mart and the firearm depicted in the video." *Id.* In view of this evidence, the state court of appeals reasonably concluded that objections to the firearms examiner's testimony "would not have altered the outcome of the trial." *Id.*; *cf. Hoglund v. Neal*, 959 F.3d 819, 836 (7th Cir. 2020) (state court's conclusion that hearsay was not prejudicial because it was

cumulative of other testimony was not unreasonable application of *Strickland*); *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("[A] petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial."), *superseded on other grounds by statute as stated in Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034–35 (11th Cir. 2022).

4. **Claim 4**

In claim four, Stinson contends that counsel was ineffective because he failed to object to an officer's translation of terms used in the cell phone video. Dkt. 1-3 at 10. Stinson reasons that the officer's testimony was an improper lay opinion and was not admissible as expert testimony. *Id.*

In rejecting this claim, the state court of appeals agreed with the trial court's determination that, based on the officer's "training and experience, his testimony was helpful to the jury." *Stinson*, 2020 WI App 41, ¶ 29. Again, this state-law evidentiary determination is binding here. *See, e.g., Richey*, 546 U.S. at 76. In light of its evidentiary ruling, the state court of appeals reasonably concluded that Stinson could not show prejudice. *See Stinson*, 2020 WI App 41, ¶ 29; *see also Hittson*, 759 F.3d at 1262.

5. **Claim 5**

In claim five, Stinson contends that counsel was ineffective because he failed to object to an officer's hearsay testimony about a traffic stop. *See* Dkt. 1-3 at 10; Dkt. 10-2 at 75. The officer testified that, although he did not make the stop, he learned about it during his investigation into the attempted robbery. *Stinson*, 2020 WI App 41, ¶ 31. The officer also testified that "Stinson was in the vehicle and that the license plate of the vehicle was different from when the same vehicle was stopped the following month." *Id.* The state argued this was

evidence showed "suspicious behavior post-shooting, which suggested consciousness of guilt." *Id.* "The State also argued that the license plate during this stop was the same license plate seen in the surveillance videos from the robbery." *Id.*

The state court of appeals concluded that Stinson could not show prejudice on this claim because, even without the officer's testimony, "ample evidence" supported Stinson's conviction. *Id.* ¶ 32. The court added: "The surveillance videos, the physical description of the actors, the type of gun used in the incident, the cell phone video, and the witnesses['] description of the vehicle used for the incident, all support the jury' verdicts." *Id.* In view of this evidence, the state court of appeals reasonably concluded that Stinson could not show prejudice under *Strickland*. *Cf. Neal*, 959 F.3d at 836; *Rose*, 634 F.3d at 1243.

6. **Claim 6**

In claim six, Stinson contends that counsel was ineffective for failing to object to the admission of certain statements he made during two police interviews. *See* Dkt. 1-3 at 11. In the first interview, Stinson allegedly invoked his right to remain silent. *See Stinson*, 2020 WI App 41, ¶ 37. In the second, Stinson allegedly invoked his right to counsel. *See id.* The state court of appeals agreed with the trial court's conclusion that, "had trial counsel attempted to suppress the statements," the trial court "would have denied the motion." *Id.* ¶ 40. The trial court so concluded based on the record of a pretrial hearing in which the trial court determined that Stinson's statements were "voluntary and not coerced." *See id.*; Dkt. 10-2 at 76. The state court of appeals also reasoned that Stinson failed to unambiguously invoke his right to remain silent and right to counsel. *See Stinson*, 2020 WI App 41, ¶¶ 37–40. Because the trial court determined before trial that Stinson's statements were voluntary and not coerced, and because Stinson made ambiguous statements regarding his right to remain

11

silent and right to counsel, the state court of appeals reasonably concluded that Stinson could not show prejudice from trial counsel's failure to press these objections at trial. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (invocations of the right to remain silent and right to counsel must be unambiguous); *see also Hittson*, 759 F.3d at 1262.

7. **Claim 7**

In claim seven, Stinson contends that the cumulative effect of counsel's alleged errors constituted ineffective assistance. Dkt. 1-3 at 11–13. The state court of appeals did not separately analyze Stinson's claim of cumulative error. *See Stinson*, 2020 WI App 41, ¶ 41. But its conclusion was reasonable.

Most of errors that Stinson alleges here stem from state-law evidentiary rulings, and I cannot consider those decisive rulings to be deficient performance on habeas review. But I will assume, without deciding, that counsel was deficient in failing to object to: (1) the firearms examiner's unreliable testimony that two firearms will never leave behind the same tool marks and; (2) the officer's hearsay testimony about the traffic stop that he did not conduct. Even without any of the firearms examiner's testimony, "the jury still heard testimony about a .380 caliber firearm being used to commit the robbery, casings from a .380 caliber firearm found in Stinson's vehicle, and casings from a .380 caliber firearm found at Lavontae's home." *Id.* ¶ 30. And, even without the officer's testimony, the state presented "surveillance videos, the physical description of the actors, the type of gun used in the incident, the cell phone video, and the witnesses['] description of the vehicle used for the incident." *Id.* ¶ 32.

The state had ample, strong evidence of Stinson's guilt without the firearms examiner or the hearsay statements about the stop. The court of appeals rejection of Stinson's argument that the cumulative effect of counsel's errors was conclusory but reasonable. *See Mosley v.*

*Atchison*, 689 F.3d 838, 851 (7th Cir. 2012) ("[A] verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record.").

### 8. New claims

Stinson contends that he has been discriminated against and deprived of due process because of his failure to receive a *Machner* hearing and OLR investigation. But errors in a state's collateral review process usually do not warrant federal habeas corpus relief. *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). Stinson's conclusory allegations do not show that his postconviction proceedings violated "some other, independent constitutional right." *See Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016). Stinson makes no argument that his OLR grievance, even if successful, would or could have any effect on his prosecution, conviction, or sentence. His claim that OLR's failure to investigate his grievance has caused the state to hold him in custody in violation of federal law is too conclusory and implausible to support habeas relief. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) (section 2254 petitions must be "heightened pleading requirements"); *Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]"). I deny these frivolous claims outright. *See* 28 U.S.C. § 2254(b)(2) (court may deny petition on the merits even if claim is unexhausted).

## C. Stinson's requests

Stinson seeks an evidentiary hearing based on his failure to receive a *Machner* hearing and OLR investigation. But Stinson's allegations are conclusory; Stinson has not meaningfully explained how these failures stopped him from presenting stronger claims. The mere fact that counsel might have testified at such proceedings does not mean that Stinson would have been

13

able to use this testimony to better articulate his claims. Stinson has not shown a basis for an evidentiary hearing. *See Mayberry v. Dittmann*, 904 F.3d 525, 532 (7th Cir. 2018) ("The district court need not hold an evidentiary hearing for vague or conclusory allegations."); *see also Stechauner v. Smith*, 852 F.3d 708, 721–22 (7th Cir. 2017) (no evidentiary hearing allowed if § 2254(d) bars relief).

Stinson contends that he is entitled to discovery to obtain documents related to his OLR investigation. But Stinson has already submitted some of these documents, Dkt. 3-1, and it is unclear how these purported documents would be relevant. Stinson has not shown "good cause" for discovery. *See* Rule 6(a), Rules Governing Section 2254 Cases.

Stinson has filed a motion for bail pending habeas litigation. Dkt. 27. Because his petition lacks merit, I will deny this motion as moot.

### D. Certificate of appealability

Because Stinson seeks relief under § 2254, he may appeal this order only if he obtains a certificate of appealability. I may issue a certificate of appealability only if Stinson makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, he "must demonstrate that reasonable jurists would find [my] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 474 (2000). Because Stinson cannot so show, I will deny a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner's petition, Dkt. 1, is DENIED, and a certificate of appealability is DENIED.

2. Petitioner's motion for bail, Dkt. 27, is DENIED as moot.

3. The clerk of court is directed to enter judgment accordingly and send petitioner a copy of this order.

Entered January 12, 2023.

                                BY THE COURT:

                                /s/

                                _____
                                JAMES D. PETERSON
                                District Judge